## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Adrian Traynum & Tiffany Carroll, | * | |
| | | Case No. 3:18-cv-2312 |
| On behalf of themselves and those similarly situated, | * | |
| | | Hon. Judge |
| | * | |
| | | Magistrate Judge |
| Plaintiffs, | * | |
| v. | | |
| | * | |
| MOBIS North America, LLC | | **JURY DEMAND ENDORSED HEREON** |
| c/o CT Corporation System | * | |
| 4400 Easton Commons Way | | |
| Suite 125 | * | |
| Columbus, Ohio 43219 | | |
| | * | |
| Defendant. | | |
| | * | |

## PLAINTIFFS' COLLECTIVE AND CLASS ACTION COMPLAINT

Now come Named Plaintiffs Adrian Traynum ("Plaintiff Traynum" or "Traynum") and Tiffany Carroll ("Plaintiff Carroll" or "Carroll") (collectively hereinafter "Named Plaintiffs" or "Plaintiffs"), through undersigned counsel, on behalf of themselves and those similarly situated, for their Collective and Class Action Complaint against Defendant MOBIS North America, LLC ("MOBIS" or "Defendant"), for its failure to fully pay employees overtime wages seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.03, and 4111.08 ("the Ohio Wage Act"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"). The claims under the FLSA are brought as a collective action pursuant to 29 U.S.C. § 216(b); and the claims pursuant to O.R.C. 4111.03, 4111.08, and the OPPA are brought as a class action pursuant to Rule 23. Plaintiffs Traynum and Carroll also individually bring claims against Defendant for violations of the Family

and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and Ohio Revised Code Chapter 4112 ("Chapter 4112"). Named Plaintiffs, on behalf of themselves on behalf of others similarly situated, hereby state as follows:

## I.     JURISDICTION AND VENUE

1.     This action is brought under 28 U.S.C. § 1331 pursuant to the FLSA and the Ohio Acts.

2.     This action is also brought for violations of the FMLA and Chapter 4112. Plaintiffs Traynum and Carroll bring this action to obtain relief provided in the FMLA and Chapter 4112 as a result of Defendant's discriminatory and retaliatory conduct towards them resulting in his loss of wages, compensation, and benefits.

3.     This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

4.     Venue is proper in this forum pursuant to 28 U.S.C. §1391, because the unlawful pay practices and employment practices alleged herein were committed in whole or in part in the Northern District of Ohio and Defendant has its principal place of business and has conducted substantial business in the Northern District of Ohio.

## II.     GENERAL FACTUAL ALLEGATIONS

### A.  Named Plaintiff Adrian Traynum.

5.     Named Plaintiff Adrian Traynum. is an individual and United States citizen. He is a resident of the State of Ohio living in the Northern District of Ohio, Western Division.

6.    Named Plaintiff Traynum was employed by Defendant from approximately March, 2013 until March 7, 2018. Plaintiff Traynum worked as an hourly, non-exempt production line worker.

7.    At all times relevant herein, Plaintiff Traynum primarily performed non-exempt job duties for Defendant.

8.    At all times relevant herein, Plaintiff Traynum was an "employee" of Defendant as defined in the FLSA, the Ohio Acts, and Chapter 4112 of the Ohio Revised Code. Further stating, Plaintiff Traynum was an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2).

**B.  Named Plaintiff Tiffany Carroll**

9.    Named Plaintiff Carroll is an individual and resident of the State of Ohio living in the Northern District of Ohio, Western Division.

10.    She was employed by Defendant as an hourly, non-exempt production worker from approximately August, 2006 until March 7, 2018.

11.    At all times relevant, Plaintiff Carroll primarily performed non-exempt duties for Defendant.

12.    At all times relevant herein, Plaintiff Carroll was an "employee" of Defendant as defined in the FLSA, the Ohio Acts, and Chapter 4112 of the Ohio Revised Code. Further stating, Plaintiff Carroll was an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2).

13.    Named Plaintiffs bring this action on behalf of themselves and on behalf of those similarly situated. They have given their written consent to bring this action to collective unpaid overtime and other unpaid compensation under the FLSA. Plaintiffs' consents are being filed along with this Collective and Class Action Complaint pursuant to 29 U.S.C. § 216(b). (*Consents to be Party Plaintiffs*, attached hereto as **Exhibit A**.)

### C.  Defendant MOBIS North America, LLC

14.     Defendant MOBIS is a foreign limited liability company authorized to, and regularly does, conduct business in Ohio, including this judicial district. Upon information and belief, MOBIS operates as a subsidiary to MOBIS America, Inc. Defendant is in the business of manufacturing and selling automotive parts.

15.     While Defendant's Ohio statutory agent address is listed as CT Corporation 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219, it has production facilities in Toledo, Ohio, Detroit, Michigan, Georgia, and Alabama.

16.     At all times relevant to this action, Defendant MOBIS is an "employer" as that term is defined by the FLSA, the Ohio Acts, and Chapter 4112.

17.     Further stating, Defendant was an "employer" as defined by the FMLA, 29 U.S.C. § 2611, *et seq.*, because it is engaged in commerce or in any industry or activating affecting commerce and employs or employed at least fifty (50) or more employees at the relevant worksite during all times relevant for each working day during each of 20 or more calendar years in the current or preceding calendar year.

18.     Upon information and belief, Defendant operates and controls an enterprise and employs employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and Defendant has had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

### III.     COLLECTIVE AND CLASS ACTION FACTUAL ALLEGATIONS

19.     All of the preceding paragraphs are realleged as if fully rewritten herein.

20.     Upon information, belief, and Defendant's own business records, all of Defendant's hourly, non-exempt workers are subject to Defendant's timekeeping system.

21.     Upon information, belief, and Defendant's business records, MOBIS has a variety of departments, including, but not limited to frame line, offline 1 and 2, sub-axel, wheel & tire, engine line, main line 1 & 2, shipping & receiving, and the regular lines.

22.     Examples of hourly, non-exempt employees of Defendant in these departments include, but is not limited to cell leaders, production workers, repair technicians, quality technicians, tag relief, maintenance technicians, tool technicians, among others (all of Defendant's hourly, non-exempt employees collectively hereinafter "Timeclock Associates")

23.     During relevant times, Defendant suffered and permitted the Named Plaintiffs and those similarly situated Timeclock Associates to work more than forty (40) hours per workweek, while not fully compensating them for all such hours worked over forty (40) at a rate of at least one and one-half times their regular rate of pay, at a minimum, as a result of Defendant's rounding policy and/or practice ("Rounding Policy").

**Defendant's Unlawful Rounding Policy – Rounding to the Detriment of MOBIS'**
**Timeclock Associates**

24.     Defendant, during all times relevant, has operated its production facilities, including the Toledo, Ohio facility, with hundreds of hourly, non-exempt employees subject to the timekeeping system, including Named Plaintiffs.

25.     Upon entry onto Defendant's premises, Defendant records the exact time upon which its Timeclock Associates arrive through the main gate and begin working for Defendant's benefit.

26.     Upon entry into the plaint, Defendant's Timeclock Associates clock in and clock out using a personal identification code and/or a finger scan.

27.     Under federal regulations, rounding practices are only lawful so long as they are used in such a manner that will not result, over a period of time, in failure to compensate an employer's employees properly for all the time they have actually worked. *See* 29 C.F.R. § 785.48(b).

28.     However, despite Defendant's timekeeping system capturing the actual time that Timeclock Associates have spent working, the timekeeping fails to compensate Timeclock Associates for all such time. Instead, Defendant's Rounding Policy systematically rounds the hourly, non-exempt Timeclock Associates' entries to reduce their compensable time worked. In many cases, the Rounding Policy systematically rounded the Timeclock Associates' time entries to their assigned start times, regardless of the time the employees actually punched in.

29.     By way of example, under Defendant's Rounding Policy, when Named Plaintiff Traynum reported for and began work on March 14, 2017, he clocked in at 4:37 p.m. Nevertheless, as a result of Defendant's Rounding Policy, Named Plaintiff Traynum was only compensated beginning at 5:00 p.m. even though he was engaged in principal activities, including tasks that are integral and indispensable to his principal activities, before his scheduled start time.

30.     As further example, under Defendant's Rounding Policy, when Named Plaintiff Carroll reported for and began work on February 10, 2017, she clocked in at 4:28 p.m. Nevertheless, as a result of Defendant's Rounding Policy, Named Plaintiff Carroll was only compensated beginning at 5:00 p.m. even though she was engaged in principal activities, including tasks that are integral and indispensable to her principal activities, before her scheduled start time.

31.     Defendant's unlawful Rounding Policy has consistently resulted in unpaid overtime wages to Plaintiffs' and the putative class members because it unlawfully reduces the compensable

hours MOBIS' Timeclock Associates work. As a result of the Rounding Policy, Timeclock Associates are only paid for less compensable hours than they actually work.

32.     At all times relevant, Defendant was fully aware that it has accurate clock-in/clock-out timekeeping records, but its Rounding Policy still reduced the actual compensable hours of its Timeclock Associates.

33.     Defendant's Timeclock Associates, including Named Plaintiffs, work without being fully compensated in various amounts of time because Defendant's Rounding Policy consistently rounds or otherwise reduces Timeclock Associates compensable time worked to the benefit of MOBIS.

34.     As such, by use of its unlawful Rounding Policy, Defendant has failed to fully compensate Plaintiffs and similarly situated hourly employees for all of the time they actually worked, including overtime hours.

35.     Plaintiffs and similarly situated Timeclock Associates have regularly engaged in principal activities, including tasks that are integral and indispensable to their principal activities, before their scheduled start times and/or end times, but have not been properly compensated for the work performed because of Defendant's Rounding Policy.

36.     Defendant's Rounding Policy has disadvantaged Plaintiffs and similarly situated Timeclock Associates over time because Defendant has maintained this policy without ensuring that the rounding would average out so that Plaintiffs and similarly situated Timeclock Associates are fully compensated for all of the time they actually worked.

37.     Upon information and belief, Defendant, at all times relevant hereto, was fully aware of the fact that it was legally required to comply with the wage and overtime payment laws of the United States and of the State of Ohio.

38.     During relevant times, Defendant has had knowledge of and acted willfully in regards to its conduct described herein.

39.     Defendant is in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

**A.  216(b) Collective Action for Unpaid Overtime Wages.**

40.     Named Plaintiffs bring their FLSA claims 29 U.S.C. § 216(b) as a representative action on behalf of themselves and all other similarly situated Timeclock Associates of the opt-in class, consisting of:

> All current and former hourly, non-exempt employees of Defendant who, during any workweek within the three years preceding the filing of the instant Complaint, have: (1) "clocked in" or "clocked out" to keep track of their compensable hours; and (2) worked at least forty (40) hours in any workweek (the "§216(b) Class" or the "§216(b) Class Members").

41.     This FLSA claim is brought as an "opt-in" collective action pursuant to 29 U.S.C. §216(b) as to claims for overtime compensation, compensation withheld in violation of the FLSA, liquidated damages and attorneys' fees under the FLSA. In addition to Named Plaintiffs, numerous putative §216(b) Class Members have been denied overtime wages due to Defendant's widespread Rounding Policy. Named Plaintiffs are representative of those other similarly situated employees and are acting on behalf of their interests as well as their own in bringing this action.

42.     The identity of the putative §216(b) Class Members are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt into it pursuant to 29 U.S.C. §216(b), for the purpose of collectively adjudicating their claims for overtime wages, liquidated damages, attorneys' fees and costs under the FLSA.

43.    The net effect of Defendant's policies and practices is that Defendant willfully failed to pay overtime wages. Thus, Defendant enjoyed substantial ill-gained profits at the expense of the Named Plaintiffs and §216(b) Class Members.

**B.   Fed.R.Civ.P. 23 Class Action for Unpaid Overtime Wages.**

44.    Named Plaintiffs bring their Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act") claims pursuant to Fed.R.Civ.P. 23 as a class action on behalf of themselves and all other members of the following class:

> All current and former hourly, non-exempt Ohio employees of Defendant who, during any workweek within the three years preceding the filing of the instant Complaint, have: (1) "clocked in" or "clocked out" to keep track of their compensable hours; and (2) worked at least forty (40) hours (the "Ohio Rule 23 Class," or the "Ohio Rule 23 Class Members").

45.    The Rule 23 Class, as defined above, is so numerous that joinder of all members is impracticable.

46.    Named Plaintiffs are each members of the Ohio Rule 23 Class and their claims for unpaid overtime wages are typical of the claims of other members of the Ohio Rule 23 Class.

47.    Named Plaintiffs will fairly and adequately represent the Ohio Rule 23 Class and the interests of all members of the Ohio Rule 23 Class.

48.    Named Plaintiffs have no interests that are antagonistic to or in conflict with those interests of the Ohio Rule 23 Class that they have undertaken to represent.

49.    Named Plaintiffs have retained competent and experienced class action counsel who can ably represent the interests of the entire Ohio Rule 23 Class.

50.    Questions of law and fact are common to the Ohio Rule 23 Class.

51.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to their non-exempt employees.

52.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) as Defendant acted or refused to act on grounds generally applicable to the Ohio Rule 23 Class, making appropriate declaratory and injunctive relief with respect to Named Plaintiffs and the Ohio Rule 23 Class as a whole.

53.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) as the questions of law and facts common to the Ohio Rule 23 Class predominate over questions affecting individual members of the Ohio Rule 23 Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

54.     Questions of law and fact that are common to the Ohio Rule 23 Class include, but are not limited to: (a) whether Defendant violated the Ohio Wage Act by failing to pay the Ohio Rule 23 Class for hours worked in excess of forty hours per week as a result of Defendant's unlawful payroll policy and/or practices as indicated above; (b) whether Defendant's violations of the Ohio Wage Act were knowing and willful; (c) what amount of unpaid and/or withheld compensation, including overtime compensation, is due to the Named Plaintiffs and other members of the Ohio Rule 23 Class on account of Defendant's violations of the Ohio Wage Act; and (d) what amount of prejudgment interest is due to Ohio Rule 23 Class members on the overtime or other compensation which was withheld or not paid to them.

55.     A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiffs' and the Ohio Rule 23 Class' claims and will prevent undue financial, administrative and procedural burdens on the parties and the Court. Named Plaintiffs and counsel

are not aware of any pending Ohio litigation on behalf of the Ohio Rule 23 Class, as defined herein, or on behalf of any individual alleging a similar claim. Because the damages sustained by individual members are modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against the Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## IV.    PLAINTIFFS TRAYNUM'S AND CARROLL'S INDIVIDUAL FMLA AND CHAPTER 4112 ALLEGATIONS

### A. Mr. Traynum's Termination – FMLA.

56.    Mr. Traynum's son suffers from asthma, which constitutes a serious health condition because he is incapacitated during symptomatic episodes. Because Mr. Traynum is his primary caretaker, Mr. Traynum was approved for intermittent FMLA leave from November 24, 2017 through May 23, 2018 at a rate of 6 episodes every 4 weeks last up to 4 days each. He medical leave was also approved for doctor appointments for his son.

57.    On February 17, 2018, Mr. Traynum was called into a meeting with Denny Sullivan, HR Director, another HR employee, and Rashad Powell, the union's vice chair. During the meeting, Mr. Traynum, for unknown reasons, was accused by Defendant of missing work due to "patterns of absenteeism" "with a particular employee." The particular employee was Plaintiff Carroll. Mr. Traynum denied the accusations and maintained that his absences were for an FMLA-qualifying reason:  to take care of this son during symptomatic episodes.

58.     On March 3, 2018, Plaintiff's son suffered a symptomatic episode for which Mr. Traynum was absent from work to care or his son. Mr. Traynum followed Defendant's call-off line procedures[1] and informed Defendant of his need for intermittent medical leave.

59.     Mr. Traynum's father and sister were also present during Mr. Traynum's son's symptomatic episode on this date.

60.     On March 5, 2018, Mr. Traynum returned to work and worked a half day. During his shift, he received a phone call from his son's mother, who indicated that Mr. Traynum's son needed to be taken care of due to another symptomatic episode. As such, Mr. Traynum followed the call-off procedures and left work to care for his son.

61.     On March 6, 2018, Mr. Traynum worked his scheduled shift without any issues.

62.     On March 7, 2018, Mr. Traynum arrived to work except this day was different. Upon his arrival, he was pulled into a meeting with Adam Hanson, Plant Manager, and Nick Garn, Supervisor, whereby Defendant, without any factual basis, disciplined Mr. Traynum for being absent on March 3, 2018 to care for his son during a symptomatic episode, despite being on notice that Mr. Traynum's absence was directly related to the attempt to or exercise of his FMLA rights.

63.     Specifically, Defendant's proffered reason for Mr. Traynum's termination was premised on Defendant's own belief that Mr. Traynum had a "pattern of absenteeism" "with a particular employee" and he needed to bring in *additional* paperwork.

64.     In response, Mr. Traynum again pled with Defendant and indicated that his absence was directly related to his son's symptomatic episode and should not be held against him as a negative factor in his employment. Despite this information, Defendant upheld its termination and

---

[1] The FMLA call-off procedures require employees to (1) call off using phone number (419) 481-8189 at least 30 minutes prior to the regularly scheduled shift; and (2) call CareWorks by the end of a shift on the day the employee calls off at 888-436-9530.

indicated Mr. Traynum violated his last chance agreement. (a true and accurate copy of Mr. Traynum's termination letter is attached hereto as **Exhibit B**.)

65.     However, the proffered reason for Mr. Traynum's termination is merely pretextual. Instead, Defendant interfered with his attempt to, or exercise of, his FMLA rights and retaliated against him for attempting to, or exercising of, his FMLA rights.

**B. Ms. Carroll's Termination – FMLA and Disability.**

66.     Ms. Carroll suffers from anxiety and hypertension, which individually or together constitute a serious health condition under the FMLA because she is unable to work or perform other regular daily activities during symptomatic episodes (anxiety and hypertension collectively hereinafter "serious health condition" or "disability").

67.     Ms. Carroll's anxiety and hypertension, either individually or collectively, also constitute a disability because individually or collectively they are physical and/or mental impairments that substantially limit her ability to perform one or more major life activities, such as focusing or thinking clearly, breathing in the form of rapid heart rates and/or rapid breathing, and trembling or muscle twitching, among others.

68.     Ms. Carroll was approved for intermittent FMLA leave from January 12, 2018 through July 12, 2018 at a rate of 2 episodes per month last up to 2 days each and 1 appointment every 6 months.

69.     During January and February, 2018, Ms. Carroll was tardy and/or absent from work either due to approved leaves of absences or symptomatic episodes stemming from her serious health condition. During these absences, Ms. Carroll complied with Defendant's call-off procedures.

70.     On March 2, 2018, while at work, Ms. Carroll felt the triggering of a flareup in the form of an anxiety attack for which she took her prescription medication. A couple of hours later, Ms. Carroll subsequently felt drowsy from the medication and left work early to recover using her allotted intermittent medical leave. The same day, Ms. Carroll followed Defendant's call-off procedures and completed additional paperwork in front of her supervisor that day to ensure that her absence was documented as medical leave for her serious health condition and/or disability.

71.     On March 3, 2018, Ms. Carroll woke up anxious like she had the previous day. To ameliorate her symptoms, Ms. Carroll took her prescription medication to assist with her flareup. Unfortunately, the medication made her drowsy again, so she followed Defendant's call-off procedures and was absent from work that day due to a symptomatic episode.

72.     Ms. Carroll did not work on March 4, 2018 (un-scheduled day), but worked without any issues on March 5-6, 2018.

73.     However, on March 7, 2018, Ms. Carroll was brought into a meeting with her supervisors whereby she was terminated for "failure to follow proper procedures regarding calling off." Even though Ms. Carroll's absence was directly related to her serious health condition and her absences were consistent with her FMLA paperwork, Defendant upheld its termination purportedly because Ms. Carroll did not bring in *additional* paperwork, which was allegedly a violation of her last chance agreement (a true and accurate copy of Ms. Carroll's termination letter is attached hereto as **Exhibit C**).

74.     However, the proffered reason for Ms. Carroll's termination is merely pretextual. Instead, Defendant interfered with her attempt to, or exercise of, her FMLA rights, retaliated against her for attempting to, or exercising of, her FMLA rights, her disability, actual or perceived, and other discriminated against her in the terms and conditions of her employment.

V.     **CAUSES OF ACTION**

**COUNT I**
**(FLSA – COLLECTIVE ACTION FOR UNPAID OVERTIME)**

75.     All of the preceding paragraphs are realleged as if fully rewritten herein.

76.     This claim is brought as part of a collective action by the Named Plaintiffs on behalf of themselves and the §216(b) Class.

77.     The FLSA requires that employees receive overtime compensation for hours worked in excess of forty (40) per week. *See* 29 U.S.C. § 207(a)(1).

78.     During the three years preceding the filing of this Complaint, Defendant employed Named Plaintiffs and the §216(b) Class Members.

79.     At all times relevant, Named Plaintiffs and the §216(b) Class Members were paid on an hourly basis.

80.     At all times relevant, Named Plaintiffs and the §216(b) Class Members worked in non-exempt positions.

81.     During their employment with Defendant, Named Plaintiffs and the §216(b) Class Members worked in excess of 40 hours during one or more workweeks.

82.     Defendant violated the FLSA with respect to Named Plaintiffs and the §216(b) Class by, *inter alia*, failing to compensate them at one-and-one-half times their regular rates of pay for all hours worked over forty (40) hours in a workweek because of the Rounding Policy.

83.     Named Plaintiffs and the §216(b) Class Members were not exempt from receiving FLSA overtime benefits.

84.     Defendant knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiffs and the §216(b) Class Members are entitled.

85.     Defendant knowingly and willfully maintained an unlawful Rounding Policy which led to its failure to pay Named Plaintiffs and the §216(b) Class Members overtime wages they were due.

86.     The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Named Plaintiffs and the §216(b) Class Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant and/or were not kept by Defendant.

87.     As a direct and proximate result of Defendant's conduct, Named Plaintiffs and the §216(b) Class Members have suffered and continue to suffer damages. Named Plaintiffs seek unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available, on behalf of themselves, and the §216(b) Class Members.

<u>**COUNT II**</u>
**(O.R.C. § 4111.03 – RULE 23 CLASS ACTION FOR UNPAID OVERTIME)**

88.     All of the preceding paragraphs are realleged as if fully rewritten herein.

89.     This claim is brought under Ohio law.

90.     The Named Plaintiffs and the Ohio Rule 23 Class Members have been employed by Defendant, and Defendant is an employer covered by the overtime requirements under Ohio law.

91.     Ohio law requires that employees receive overtime compensation "not less than one and one-half times" (1.5) the employee's regular rate of pay for all hours worked over forty (40) in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1).

92.     While employed by Defendant, the Named Plaintiffs and the Ohio Rule 23 Class Members worked in excess of the maximum weekly hours permitted under O.R.C. § 4111.03, but were not paid overtime wages for all such hours because of the Rounding Policy.

93.     Defendant's company-wide Rounding Policy led to its failure to pay Named Plaintiffs and the Ohio Rule 23 Class Members overtime for all compensable hours worked in excess of 40 in a workweek as described above.

94.     The Named Plaintiffs and the Ohio Rule 23 Class were not exempt from the wage protections of Ohio law.

95.     Defendant's repeated and knowing failure to pay overtime wages to the Named Plaintiffs and the Ohio Rule 23 Class Members were violations of R.C. §4111.03, and as such, Defendant willfully withheld and failed to pay the overtime compensation to which the Named Plaintiffs and the Ohio Rule 23 Class Members are entitled.

96.     For Defendant's violations of R.C. §4111.03, the Named Plaintiffs and the Ohio Rule 23 Class Members have suffered and continue to suffer damages. The Named Plaintiffs seek unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available, on behalf of themselves and the Ohio Rule 23 Class Members.

## COUNT III
### (R.C. § 4113.15 – RULE 23 CLASS ACTION FOR VIOLATIONS OF THE OHIO PROMPT PAY ACT)

97.     All of the preceding paragraphs are realleged as if fully rewritten herein.

98.     During relevant times, Named Plaintiffs were employed by Defendant.

99.     During relevant times, Defendant was an entity covered by the OPPA; and Named Plaintiffs were employed by Defendant within the meaning of the OPPA.

100.    The OPPA requires that the Defendant pays Named Plaintiffs and the Ohio Rule 23 Class all wages, including unpaid overtime, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

101.    During relevant times, Named Plaintiffs and the Ohio Rule 23 Class Members were not paid overtime wages at one and one-half times their regular rate within thirty (30) days of performing the work. *See* O.R.C. §4113.15(B).

102.    Named Plaintiffs' and the Ohio Rule 23 Class Members' unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

103.    Named Plaintiffs and the Ohio Rule 23 Class Members have been harmed and continue to be harmed by Defendant's acts or omissions described herein.

104.    In violating the OPPA, Defendant acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

### COUNT IV
**(Plaintiffs' Traynum and Carroll Claims for FMLA Interference - 29 U.S.C. § 2615(a)(1))**

105.    All of the preceding paragraphs are realleged as if fully rewritten herein.

106.    At all times relevant, Plaintiff Traynum and Plaintiff Carroll were each an "eligible employee" as defined by 29 U.S.C. § 2611(2) because they each (a) employed other than in domestic service for at least 12 months; and (b) worked for at least 1,250 hours of service for Defendant during the previous 12-month period.

107.    At all times relevant, Defendant is a covered "employer" as defined by 29 U.S.C. § 2611(4)(A) because it is engaged in commerce or in any industry or activity affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the

Plaintiffs' worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action.

108.    At all times relevant, Plaintiff Traynum's absences as described above were for an FMLA-qualifying reason, i.e. to take care of his son during symptomatic episodes, which required him to be absent from work intermittently.

109.    Defendant was aware of Mr. Traynum's absences related to his FMLA rights because Mr. Traynum complied with Defendant's call-off procedures or other procedures as they related to exercising intermittent medical leave.

110.    At all times relevant, Plaintiff Carroll's absences as described above were for an FMLA-qualifying reason, which required her to be absent from work intermittently.

111.    Defendant was aware of Ms. Carroll's absences related to her FMLA rights because she complied with Defendant's call-off procedures or other procedures as they related to exercising intermittent medical leave.

112.    Pursuant to 29 U.S.C. § 2615(a)(1), it is unlawful for an employer to interfere with an employee's right to exercise FMLA leave.

113.    Pursuant to 29 C.F.R. § 825.300(b), *et seq.*, when an employee requests leave or when the employer acquires knowledge that the employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of his eligibility to take FMLA leave. Additionally, if the employee is not eligible for FMLA leave or if the employee's eligibility status has changed, the employer must state at least one reason why the employee is not eligible.

114.    Pursuant to 29 C.F.R. § 825.301, Defendant is also required to inquire further of the employee to ascertain whether medical leave is potentially FMLA-qualifying. Once the

employer has acquired knowledge that the leave is being taken for a FMLA-qualifying reason, the employer must notify the employee as provided in § 825.300(d).

115.    On March 7, 2018, Plaintiffs were terminated purportedly because they did not bring in *additional* paperwork above and beyond their FMLA-approved paperwork.

116.    However, the proffered reason for their termination is merely pretextual because Defendant's proffered reason is premised on its own, conclusory assumptions that the absences were not for FMLA-qualifying reasons despite Plaintiffs each informing Defendant that their absences were FMLA-qualifying events.

117.    As such, it is plausible to infer that the reason for Plaintiffs' termination was because of Plaintiffs' taking of medical leave and intent to continue taking medical leave for FMLA-qualifying events as described above.

118.    Defendant interfered with Plaintiffs' rights by taking the following non-exhaustive list of actions:  disciplining them for absences directly related to their attempt to or exercise of their FMLA rights, discouraging them from attempting to or exercising their FMLA rights, terminating their employment without a legitimate business justification despite having knowledge that their absences were directly related to their FMLA rights, treating them less favorably than similarly situated employees who did not attempt to or exercise their FMLA rights, and otherwise discriminating against them in the terms and conditions of their employment.

119.    As a direct and proximate result of Defendant's actions, Plaintiffs have each suffered damages, which entitles them under 26 U.S.C. § 2617(a) to reinstatement and to recover lost wages and benefits, liquidated damages equal to their actual damages, costs, and attorneys' fees, and equitable relief as this Court may deem appropriate.

<u>COUNT V</u>
**(Plaintiffs' Traynum and Carroll Claims for FMLA Retaliation - 29 U.S.C. § 2615(a)(2))**

120.    All of the preceding paragraphs are realleged as if fully rewritten herein.

121.    During their employment, Plaintiffs exercised and/or attempted to exercise their rights under the FMLA when they requested, were approved of, and subsequently took intermittent medical leave for qualifying reasons under the FMLA, which constitutes protected activity.

122.    Defendant had knowledge of Plaintiffs' exercise of, or attempt to, exercise their FMLA rights as evidenced by Plaintiffs' notice to their employer, completion of all requisite FMLA paperwork for the qualifying events, and Defendant's discipline, including termination, of Plaintiffs for taking protected leave as described above.

123.    On March 7, 2018, Plaintiffs were terminated purportedly because they did not bring in *additional* paperwork above and beyond their FMLA-approved paperwork.

124.    However, the proffered reason for their termination is merely pretextual because Defendant's proffered reason is premised on its own, conclusory assumptions that the absences were not for FMLA-qualifying reasons despite Plaintiffs each informing Defendant that their absences were FMLA-qualifying events.

125.    As such, it is plausible to infer that the reason for Plaintiffs' termination was because of Plaintiffs' taking of medical leave and intent to continue taking medical leave for FMLA-qualifying events as described above.

126.    By engaging in the foregoing conduct as described above, Defendant retaliated against Plaintiffs' exercise of or attempt to exercise their FMLA rights, in violation of 29 U.S.C. § 2615(a)(2).

127.    Defendant lacked good faith to believe it had not violated the FMLA in its actions.

128.    As a direct and proximate result of Defendant's actions, Plaintiffs have each suffered damages, which entitles them under 26 U.S.C. § 2617(a) to reinstatement and to recover lost wages and benefits, liquidated damages equal to their actual damages, costs, and attorneys' fees, and equitable relief as this Court may deem appropriate.

**COUNT VI**
**(Plaintiff Carroll's Disability Discrimination Claim – R.C. § 4112.02, *et seq.*)**

129.    All of the preceding paragraphs are realleged as if fully rewritten herein.

130.    At all times relevant herein, Plaintiff Carroll was a qualified individual because she suffered from a physical and/or mental impairment, which individually or collectively constitute a disability within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

131.    Defendant knew Plaintiff Carroll was disabled, had a record of a disability, and/or regarded her as disabled given she was approved for intermittent medical leave under the FMLA as described above.

132.    Plaintiff Carroll's use of medical leave as described above was reasonable and definite in duration.

133.    Defendant discriminated against Plaintiff Carroll because of her disability by taking the following non-exhaustive list of actions:  disciplining her for absences directly related to her disability, failing to accommodate her, terminating her employment without a legitimate business justification despite having knowledge that their absences were directly related to her disability, treating her less favorably than similarly situated employees who did not have a disability, a record of a disability, or were perceived as disabled, and otherwise discriminating against her in the terms and conditions of her employment.

134.    By Defendant's foregoing omissions and commissions, Defendant violated Ohio Revised Code § 4112.02(A).

135.     As a direct and proximate result of Defendant's conduct, Plaintiff Carroll has suffered and will continue to suffer damages.

136.     Defendant's foregoing actions were willful, wanton, reckless, and taken with a conscious disregard for the rights of Plaintiff Carroll, causing her to lose wages, salary, employment benefits, emotional pain, suffering, inconvenience, shame, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and entitling her to reinstatement, and to recover her actual damages, interest thereon, punitive damages, attorneys' fees, costs, and other relief available under Ohio Revised Code Chapter 4112.

### COUNT VII
### (Plaintiff Carroll's Retaliation Claim – R.C. § 4112.02(I))

137.     All of the preceding paragraphs are realleged as if fully rewritten herein.

138.     This claim is brought under Ohio law, pursuant to Ohio Revised Code § 4112.02(I), *et seq*.

139.     At all times relevant, Plaintiff Carroll was able to perform the essential functions of her position despite her disability had Defendant not held her absences relating to her disability against her.

140.     Defendant knew that she was disabled, had a record of a disability, and/or regarded her as disabled.

141.     Plaintiff Carroll engaged in protected activity by requesting reasonable accommodation for her disability in the form of medical leave from work.

142.     Plaintiff Carroll also engaged in protected activity by taking reasonable and definite medical leave as described above.

143.     Defendant knew that Plaintiff Carroll engaged in protected activity as described above.

144.     Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff Carroll by taking the following non-exhaustive list of actions:  failing to accommodate her disability, disciplining her in the form of attendance points, terminating her employment, treating her less favorably than similarly situated employees without a disability, a record of a disability, or perceived as disabled, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

145.     By Defendant's foregoing omissions and commissions, Defendant violated Ohio Revised Code § 4112.02(I).

146.     As a direct and proximate result of Defendant's conduct, Plaintiff Carroll has suffered and will continue to suffer economic and non-economic damages.

147.     The Defendant's foregoing actions were taken with a conscious disregard for the rights of Plaintiff Carroll, causing her to lose wages, salary, employment benefits, emotional pain, suffering, inconvenience, shame, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and entitling her to reinstatement, and to recover her actual damages, interest thereon, punitive damages, attorneys' fees, costs, and other relief available under Ohio Revised Code Chapter 4112.

## VI.     PRAYER FOR RELIEF

**WHEREFORE**, as to **Count I** Named Plaintiffs and other members of the §216(b) Class pray for relief and damages as follows:

(A)     A declaratory judgment that Defendant's wage and hour policies and/or practices as alleged herein violate the FLSA;

(B)     An order for injunctive relief ordering Defendant to end all of the illegal wage policy and practice alleged herein pursuant to the FLSA and attendant regulations and requiring Defendant to follow such laws going forward;

(C)     An Order certifying the proposed §216(b) Class;

(D)     Judgment against Defendant for damages for all unpaid overtime compensation owed to Named Plaintiffs and the §216(b) Class during the applicable statutory period under the FLSA 29 U.S.C. § 201, *et seq.,* and attendant regulations at 29 C.F.R. § 516, *et seq.;*

(E)     Judgment against Defendant for liquidated damages pursuant to the FLSA, 29 U.S.C. § 201, *et seq.,* and attendant regulations at 29 C.F.R. § 516 *et seq.*, in an amount equal to all unpaid overtime compensation owed to Plaintiffs and all other similarly situated employees during the applicable statutory period;

(F)     An Order directing Defendant to pay reasonable attorneys' fees and all costs connected with this action;

(G)     Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

(H)     Judgment for any and all civil penalties to which Plaintiffs and all other similarly situated employees may be entitled; and

(I)     Such other and further relief as to this Court may deem necessary, just or proper.

**WHEREFORE**, as to **Counts II** and **III**, Named Plaintiffs and other members of the Ohio Rule 23 Class pray for declaratory relief and damages as follows:

(J)     A declaratory judgment that Defendant's wage and hour policies and practices as alleged herein violate the Ohio Wage Act with respect to the non-payment of overtime and violations of the OPPA;

(K)      An order for injunctive relief ordering Defendant to end all of the illegal wage policy and practice alleged herein pursuant to the Ohio Wage Act and the OPPA, and requiring Defendant to follow such laws going forward;

(L)      An Order certifying the proposed Ohio Rule 23 Class under the Ohio Wage Act and the OPPA;

(M)      Judgment against Defendant for damages for all unpaid overtime compensation owed to Named Plaintiffs and the Ohio Rule 23 Class during the applicable statutory period under the Ohio Wage Act;

(N)      Judgment against Defendant for liquidated damages pursuant to the OPPA in an amount equal to six percent (6%) of all unpaid overtime compensation owed to Named Plaintiffs and the Ohio Rule 23 Class during the applicable statutory period;

(O)      An Order directing Defendant to pay reasonable attorneys' fees and all costs connected with this action;

(P)      Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

(Q)      Judgment for any and all civil penalties to which Plaintiffs and all other similarly situated employees may be entitled; and

(R)      Such other and further relief as to this Court may deem necessary, just or proper.

**WHEREFORE**, as to **Counts IV** through **V**, Plaintiffs Traynum and Carroll pray that this Court enter judgment against MOBIS as follows:

(S)      Ordering Defendant to reinstate Plaintiffs;

(T)      Ordering Defendant to pay monetary relief in an amount sufficient to compensate Plaintiffs for the wages and benefits lost up to the time of reinstatement;

(U)     Ordering Defendant to pay monetary relief in the amount sufficient to compensate Plaintiffs for future wages and benefits lost in the event reinstatement is not feasible;

(V)     Ordering Defendant to pay liquidated damages in an amount equal to their compensatory damages;

(W)    Ordering Defendant to pay punitive damages;

(X)     Ordering Defendant to pay pre-judgment interest and post-judgment interest;

(Y)     Injunctive relief prohibiting Defendant from engaging in present, ongoing, and future violations of the FMLA in the form of penalizing its employees for absences related to an FMLA-qualifying event in Defendant's no-fault attendance policy;

(Z)     Declaratory judgment that no-fault attendance policies, in the form or in application thereof, are a violation of the FMLA;

(AA)   Ordering Defendant to pay Plaintiffs' costs and reasonable attorney fees associated with this action; and

(BB)   Such other and further relief as this Court may deem necessary, just or proper.

**WHEREFORE**, as to **Counts VI** through **VII**, Plaintiff Carroll prays that this Court enter judgment against MOBIS as follows:

(CC)   back pay and benefits, front pay and benefits, and additional damages to be determined at trial, including but not limited to statutory damages, compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees, and all other relief the Court deems necessary, just or proper.

Respectfully submitted,

**BRYANT LEGAL, LLC**

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859), Trial Attorney
1457 S. High St.
Columbus, Ohio 43207
Telephone:  (614) 704-0546
Facsimile:  (614) 573-9826
Email:  dbryant@bryantlegalllc.com

*/s/ Matthew B. Bryant*
Matthew B. Bryant (0085991)
3450 W Central Ave., Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439
Facsimile: (419) 932-6719
Email: Mbryant@bryantlegalllc.com

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
**Coffman Legal, LLC**
1457 S. High St.
Columbus, Ohio 43207
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

*Attorneys for Named Plaintiffs and those similarly
situated*

## JURY DEMAND

Named Plaintiffs request a trial by a jury of twelve (12) persons.

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)